[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
September 2, 2005
THOMAS K. KAHN
CLERK

_____

No. 04-16217
Non-Argument Calendar

_____

D.C. Docket No. 99-02843-CV-BBM-1

SARAH ELIZABETH CHAVIS,
as Administrator of the Estate of
William Russell Chavis,

Plaintiff-Appellant,

versus

CLAYTON COUNTY SCHOOL
DISTRICT,
JOE A. HAIRSTON,
OZIAS PEARSON, individually
and agents and employees of
Clayton County School District,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 2, 2005)

Before EDMONDSON, Chief Judge, ANDERSON and WILSON, Circuit Judges.

PER CURIAM:

Sarah Elizabeth Chavis, as administrator of the estate of Dr. William Chavis ("Plaintiff"), appeals the final judgment pursuant to the jury's verdict in favor of Clayton County School District ("CCSD"), Dr. Joe Hairston, and Dr. Ozias Pearson, in this case alleging, among other things, race discrimination in violation of 42 U.S.C. § 1985(2). No reversible error has been shown; we affirm.

Plaintiff filed suit against his employer, CCSD, and his supervisors, Hairston and Pearson, who are black. Plaintiff alleged that Pearson and Hairston, on the basis of race, discriminated against white teachers within the CCSD. Specifically, Plaintiff testified in a criminal proceeding against a white teacher, DW, who allegedly entered into a sex-for-grades arrangement with a 16-year old black male student.[1] In a previous appeal we concluded that Chavis had stated a claim under the second clause of section 1985(2) based on Plaintiff's evidenced allegations "that Defendants (because of their racial animosity towards DW) retaliated against Plaintiff--that is, sought to injure him--for truthfully testifying to her advantage at a criminal proceeding, that is, for attempting to enforce DW's

---

[1] Part of Plaintiff's job was to investigate complaints of misconduct against teachers and other professionals.

right to the equal protection of the laws."  Chavis v. Clayton County Sch. Dist., 300 F.3d 1288, 1293 (11th Cir. 2002).

Plaintiff appeals some of the trial court's evidentiary decisions.  We review evidentiary rulings of the district court for abuse of discretion.  Cabello v. Fernandez-Larios, 402 F.3d 1148, 1160 (11th Cir. 2005).

Plaintiff first argues that the district court improperly refused to allow him to present the testimony of five CCSD employees who would have testified about prior discriminatory acts against white teachers.  Plaintiff claims that this evidence was crucial to show Defendants' intent to discriminate against white employees, including DW.

At a pre-trial conference, the district court wished to keep the testimony "closely tailored" to racially discriminatory remarks that Defendants made to Plaintiff; the court indicated that it did not want Plaintiff to call witnesses who merely would "come in and tell their gripes about Pearson and Hairston."  The district court characterized this testimony as arising under Fed.R.Evid. 404(b).

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed.R.Evid. 404(b).  But this evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan,

knowledge, identity, or absence of mistake or accident." Id. And the district court may exclude such evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed.R.Evid. 403.

After a proffer, the district court excluded the testimony of John Ireland and Danny Langford, both CCSD teachers who said that, after they suffered adverse employment acts, they were informed by Plaintiff that they were being discriminated against and that they should hire a lawyer. The district court correctly noted that both Ireland and Langford admitted that they had no knowledge that the employment decisions against them were motivated by race.[2] And the district court stated that Plaintiff himself could testify on what Defendants said to him about Langford and Ireland. We cannot say that the district court abused its discretion in excluding Langford's and Ireland's testimony. A risk of unfair prejudice to Defendants existed if this case turned into, as the district court stated, "a relitigation of every personnel decision made while [Defendants] were in place down in the Clayton County School System." And

---

[2] Ireland testified that he merely would be speculating about whether he felt he had been treated differently from a black coworker on the basis of race; and he admitted that he had engaged in some unprofessional conduct prior to the employment act taken against him. Langford stated that, although Plaintiff told him he was being discriminated against racially, he did not know whether he was being demoted because of his race.

4

since the only information about race discrimination that Langford and Ireland offered would have come from Plaintiff, the probative value of their testimony was not great.

Plaintiff also proffered the depositions of Wayne and Glenice Graves. The deposition of Ms. Graves, who was an assistant principal, showed that she was passed over for promotion by Hairston in favor of black persons and that she thought that she was "a victim of Hairston." Mr. Graves, who was an assistant principal at a different school, stated in his deposition that he, too, was passed over for a promotion by Hairston and that he filed an EEOC claim, which he did not pursue, about this matter.

As the district court suggested, a risk of substantially unfair prejudice to Defendants existed had the district court allowed this trial to become a set of mini-trials on Defendants' personnel decisions. And these mini-trials could have confused the jurors into thinking that the mini-trials were the main case. We also observe that the district court allowed Ms. Graves to present, on the issue of Defendants' racial animus, more probative testimony (1) that Pearson had a reputation in the community for not "regard[ing] the white race with a great deal of respect" and (2) that once she got to know Hairston, he seemed to prefer black administrators.

5

Plaintiff also proffered the deposition of Morris Blasingame, a black CCSD employee. According to Plaintiff, Defendants were attempting to support the allegation that DW had sex with a black student by trying to find a black colleague of DW's with whom she might have had sex. Plaintiff insists that Blasingame's testimony would have shown that Defendants and the police threatened Blasingame that he would lose his job if he lied about having sex with DW. But our review of Blasingame's testimony shows that the detective investigating the DW case--not Defendants--threatened Blasingame if Blasingame lied. Nothing in Blasingame's testimony connects Defendants with the detective's threats. Blasingame's testimony on this matter would have had no probative value on the issue of Defendant's racial animus.

In sum, the district court was within its discretion to conclude that evidence of the adverse employment acts suffered by Ireland, Langford, and Mr. and Ms. Graves posed too great a danger of improperly swaying the jury to render its decision based on a relitigation of personnel issues rather than on Defendants' alleged retaliation against Plaintiff for his testimony in the DW case. And the testimony of Blasingame is not probative of the issues in this case.

Plaintiff argues second that the district court erred by refusing to allow him to refresh the recollection of one of Defendants' witnesses, Ed Scott, a former

principal who became a CCSD personnel director, on Hairston's reputation in the community for professional misconduct. Plaintiff sought to refresh Scott's memory by questioning him on a newspaper article accusing Hairston of racial misconduct against white employees. Plaintiff maintains that this evidence was relevant to show Defendants' racial animus.

Our reading of the record does not support Plaintiff's argument. Plaintiff asked Scott what Hairston's reputation in the community was for race discrimination. Scott answered that he did not have knowledge of Hairston's reputation in the community. But Scott did not say that he could not remember what Hairston's reputation was in the community. Thus, the record belies Plaintiff's statement that Scott's memory needed refreshing.[3] Plaintiff has not demonstrated that the district court abused its discretion in refusing to allow Plaintiff to refresh Scott's recollection on Hairston's reputation in the community through the newspaper article.[4]

AFFIRMED.

---

[3] Plaintiff's attempt to introduce the newspaper article might be characterized more properly as an attempt to use extrinsic evidence to impeach Scott's testimony. But Plaintiff does not argue on appeal, nor did he argue at trial, that he wished to impeach Scott's testimony; this argument is abandoned. See Access Now, Inc. v. Southwest Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004).

[4] We reject Plaintiff's request that we take judicial notice of the newspaper article.